## Harriman v. Sanborn.

An order drawn by F on the defendant, as express agent, directing him to pay one H, or bearer, fifty-five dollars, " being the money that came to your hand from B to me ; and this shall be your warrant for so doing, and good as my receipt for said money," is to be regarded only as conferring authority to pay the specific fund, without other interest, and is revocable by the drawer ; and, if revoked before acceptance, and the money returned to the drawer, the defendant will be discharged from liability.
Wherever an order or bill is drawn upon a particular fund, it is not negotiable.

This action was committed to a referee, who reported the facts as follows :

Prior to May, 1859, and since that time, the defendant was and has been the depot master upon the Boston, Concord & Montreal Railroad, at their depot in Warren, N. H., and was during this time also the agent for Cheney & Co's Express Company, doing their business at the same place ; upon May 5, 1859, a package came into his office by Cheney & Co's Express consigned to one Timothy Fitts Geralds, and purporting to contain, by the marking on the outside of the envelope, $55. It came in one of the Express Company's sealed envelopes, purporting to be sent from one Albert A. Bailey. Upon the afternoon of the same day that this package was received, the defendant was trusteed on account of said Bailey by Prescott & Williams, of Warren. They summoned both Cheney & Co. and Sanborn, as the trustees of Bailey. May 14, Mrs. Harriman, wife of James Harriman, the plaintiff, presented to Mr. Sanborn the following order :—

" To Mr. James Sanborn, depot master and express agent at Warren, N. H. Pay to James Harriman or bearer fifty-five dollars, being the money that came to your hand from Albert Alphonzo Bailey to me, and this shall be your warrant for so doing, and good as my receipt for the said money.          Timothy Fitts Geralds.
        May 14th, 1859."

When Mrs. Harriman presented this order, she wished Mr. Sanborn to pay the money, or deliver her the package ; but he declined, on the ground that he had been trusteed ; she then desired him to accept the order in writing, but he refused to do so ; she then offered, if he would pay over to her the money, to give him an obligation to refund the same if he was held as trustee, in her own name or her husband's ; but he declined to do so, but told her that whenever he was discharged as trustee in that suit, he would pay her the money or deliver her the package, and at last told her to leave the order with one Merrill, and that when he should be discharged as trustee, he would deliver the money to Merrill upon the order, and she did thus leave the order with Merrill.

Merrill was made a depositary of this order by agreement of both parties, and when Sanborn went to Prescott's store to pay over the money, he called on Merrill and took the order, and carried it with him, but afterward sent it back ; whereupon Merrill went himself with the order, and was present when the money was paid over, as stated in the case. In other conversations subsequent to this, Mr. Sanborn said he should be glad to pay over this money, and that he

would do so to Mrs. Harriman on this order if he was discharged as trustee.

The package was kept in a safe until the 19th of September, 1859, by said Sanborn. On the 16th of the same September, the said Timothy Fitts Geralds having personally demanded this money himself, brought an action of trover against said Sanborn for the same; and on the 19th of the same month, the said A. A. Bailey and the said Fitts Geralds, and the said Sanborn and Williams being together, made a compromise of their suits, and Sanborn was discharged as trustee by Prescott & Williams, whereupon he delivered over the package of money to said Fitts Geralds upon his paying the express bill of fifty cents thereon, and Sanborn took a receipt, of which the following is a true copy:

" Received of Cheney & Co. one package said to contain fifty-five dollars in money from A. A. Bailey to Timothy F. Geralds.

Warren, Sept. 19, 1859.                    Timothy F. Geralds."

Merrill was present with the order of Harriman when Sanborn delivered this package to Fitts Geralds, but nothing was paid upon said order, either by Sanborn or Fitts Geralds. About a week after this, Mrs. Harriman got the order of Merrill, and went and demanded the money of Sanborn upon the order, and commenced this suit March 16, 1860, which is assumpsit upon the general counts, with a specification in which the plaintiff claims fifty-five dollars, and interest on the same since May 14th, 1859, upon the order given to the plaintiff of that date. The defendant pleaded the general issue.

Upon the foregoing facts the auditor, in order to raise the questions of law, ruled that the plaintiff could not maintain the suit, and the plaintiff excepted, and the questions thus raised were submitted to the court for determination.

*T. J. Smith,* for the plaintiff, referred to *Underhill* v. *Gibson,* 2 N. H. 352; *Woodes* v. *Dennett,* 9 N. H. 55; *Moor* v. *Wilson,* 26 N. H. 332; Byles on Bills 242.

*J. S. Bryant,* for the defendant.

Nesmith, J. The order in this case has many of the requisites of a negotiable note or bill of exchange. It is payable to J. Harriman or bearer, and is a direction for the payment of money. It has the want of the words "value received." These words may be omitted, and proof furnished *aliunde* to supply a good consideration, if it has the other qualities necessary to a bill of exchange. These words are ordinarily inserted both in a bill of exchange or check for the payment of money. Their absence is not conclusive against it, but creates suspicious circumstances, to be weighed in forming a judgment as to the meaning and intent of the paper. So are the words constituting the concluding phrase of the order, namely, "and this shall be your warrant for so doing, and good as my receipt for the said money," also unusual in bills of exchange, and indicate that it was a mere authority conferred to receive pay, and to receipt for the money, and nothing more. This order can be regarded as no more than

a mere authority to deliver a specific parcel of money, "being the money that came from Albert A. Bailey to me." It was not to pay the sum of $55, at all events, but only the specific money received of Bailey. Here was a mere authority conferred upon the drawee without an interest. There can be no presumption in favor of the payee that he has any interest in the order. He must be regarded as the mere servant of the drawer, and his authority is revocable at any moment, and the drawer is authorized to call for and receive the money at his pleasure, except so far as he may have bound himself by his own acts. In this instance, Fitts Geralds having received the money himself, the defendant was under no further responsibility to any body. The order could not be regarded as accepted by the defendant. Fitts Geralds countermanded or revoked his authority before acceptance, and Sanborn and Harriman had due notice or knowledge of the revocation.

"A draft that has not been accepted, and a bank check, should not be paid after notice from the drawer countermanding the authority." Edwards on Bills 546, and authorities there cited.

There is still another legal, and perhaps more technical objection, but equally fatal to the plaintiff's right to maintain this action. In order that a bill of exchange be good, it must be for the payment of money only and absolutely, and not contingent, either as to amount, event, fund, or person. Chit. on Bills 132. This is on account of certainty and precision in mercantile affairs. Ibid. 137. This order being regarded as payable out of a particular fund, or as the delivery of a particular package of money, is not negotiable, and the plaintiff can not therefore maintain this action. 3 Kent's Com. 94; Chitt. on Bills, note 10; *Reeside in Error*, 2 Wheat. 233; 2 Blackf. 47; *Cushing* v. *Satterlee*, 6 Cow. 108; *Jeremy* v. *Hale*, 1 Str. 595. The rule is uniform that whenever the order or bill is drawn on a particular fund, it is not negotiable.

The conclusion is, that the ruling of the referee was correct, that this action could not be maintained.